UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| STEPHEN KRELLER | * | CIVIL ACTION No.:24-02671 |
|     Plaintiffs | * | |
| | * | |
| VERSUS | * | JUDGE: IVAN L.R. LEMELLE |
| | * | |
| GARRISON PROPERTY AND | * | |
| CASUALTY INSURANCE COMPANY | * | MAGISTRATE: KAREN WELLS ROBY |
|     Defendant | * | |

* * * * * * * * * * * * * * * * * * * * * *

### GARRISON PROPERTY AND CASUALTY INSURANCE COMPANY'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendant, Garrison Property and Casualty Insurance Company ("Garrison" or "Defendant"), respectfully submits this Memorandum in Support of its Motion for Summary Judgment and requests that the claims of Plaintiff, Stephen Kreller ("Kreller" or "Plaintiff"), be dismissed with prejudice. Plaintiff's Uninsured Motorist coverage has never been triggered because the at-fault driver, Linette Nolan, was not an underinsured motorist; she had at least $1 million in underlying coverage, from Travelers, which accepted 100% liability. Similarly, Plaintiff has no viable bad faith claim against Garrison because Plaintiff's UM coverage was never triggered, and at a minimum, there is a reasonable dispute over whether coverage is triggered.

**I.     Background**

This case concerns a three-car accident that occurred on December 15, 2022 on Veterans Boulevard in Metairie, Louisiana. Plaintiff was driving in the eastbound left lane of Veterans when he was rear-ended by Michael Villella who was himself rear-ended by Linette Nolan ("Nolan").[1] All of Plaintiff's communications with Garrison relayed that Linette Nolan was at fault for the accident. On February 2, 2023, Plaintiff, who is a licensed Louisiana attorney that has practiced

---

[1] Exhibit 1, Deposition of Stephen Kreller ("Kreller Depo"), attaching police report as Exhibit 1.

personal injury law,[2] informed Garrison in a written message through Garrison's online "CCOM" messaging system that he was "scheduled to have [his] vehicle repaired at Nola Collision next week. The claim is behind handled by the insurer for the *at fault driver*."[3] Plaintiff then provided Garrison with the information for Travelers, who was Linette Nolan's insurer. On December 5, 2023, Plaintiff's counsel sent Garrison a UM demand in which he stated that Kreller was "injured in a December 15, 2022 motor vehicle accident when he was rear ended by Linette Nolan . . . Mr. Kreller resolved his claims with Ms. Nolan and National Union; however, they were not able to fully compensate him for his damages."[4] At no point in this UM demand did Mr. Kreller's attorney mention that he thought that Villella had rearended Kreller first, followed by Nolan rearending Villella, pushing Villella's car into Kreller's car, resulting in a second impact. Instead, he claimed that Nolan's insurance was inadequate.[5] Nolan had at least $1 million in available insurance.[6]

Indeed, the fact that Nolan was the tortfeasor for this accident was similarly relayed by Plaintiff's counsel to Travelers in multiple communications. First, Plaintiff counsel sent Travelers a notice of representation the day after the accident, on December 16, 2022. In that communication, Plaintiff's counsel relayed, "our client was injured in an auto accident caused by your insured. Our investigation reveals that your insured was at fault in this accident and you, as the liability carrier on the date of loss, are responsible for our client' damages and injuries."[7] Later, when Plaintiff

---

[2]   *Id.*, at 9:20-10:25.

[3]   *Id.*, at 36:3-37:17 (attaching Exh.4, communication from Kreller to Garrison) (emphasis added); *see also* Exhibit 2, Corporate Deposition of Garrison ("Corporate Depo"), at 14:9-16:21.

[4]   Exhibit 1, Kreller Depo, at 43:20-45:2, attaching Exh. 6.

[5]   *Id.*

[6]   Exhibit 1, Kreller Depo, at 45:3-6; Exhibit 2, Corporate Depo, at 36:13-20.

[7]   Exhibit 1, Kreller Depo, at 32:22-33:24, attaching Exh. 3.

2

made a formal demand on Travelers on August 22, 2023, Plaintiff's counsel sent a demand letter that read "As you are aware, our firm represents Stephen Kreller in connection with a motor vehicle accident that occurred on December 15, 2022, when a vehicle operated by Linette Nolan, an employee of The Travelers Indemnity Company violently and forcefully crashed into the rear end of a vehicle which in turn, crashed into the rear end of Mr. Kreller's vehicle."[8] At no point in either his communications with Travelers or with Garrison did Kreller or his representatives relay that he considered Michael Villella and Nolan to each be 50% at fault for the accident. Indeed, Travelers settled with Plaintiff for $275,000 at a time when Plaintiff had $41,959.56 in medical specials and had undergone physical therapy, one set of lumbar medial branch blocks and one set of ablations, thus reflecting a general damage recovery of $233,040.44.[9] Travelers' file material indicates that it considered Nolan to be 100% responsible for this accident.[10]

After accepting Travelers' settlement offer of $275,000 based upon Travelers' insured being 100% at fault, Kreller then sought additional recovery from Garrison. Plaintiff sent a demand on December 5, 2023, requesting the $300,000 policy limits.[11] Garrison informed Kreller on December 26, 2023 that it was unable to determine that a UM claim was triggered and needed further information, including an affidavit of no other insurance from the owner of the at-fault

---

[8] Exhibit 1, Kreller Depo, at 37:19- 43:9 (attaching Exh. 5, Plaintiff's demand to Travelers).

[9] *See* Exhibit 1, Kreller Depo, at 37:19-45:2 (attaching Exh. 5, Plaintiff's demand to Travelers and Exh. 6, Plaintiff's demand to Garrison) (Plaintiff's demand to Garrison was sent three months after the one to Travelers and had substantively identical information). Typical general damages recovery for plaintiffs with a year of treatment, including physical therapy, one set of medal branch blocks, and RFAs is $115,000. *See, e.g., Fourroux v. Whipple*, 2018-01333 (Civil District Court 10/10/19) (awarding general damages of $115,000.00 for a lumbar injury treated with branch blocks and two ablations, with future ablations recommended).

[10] Exhibit 3, Travelers Subpoena Response, p. 353, (screenshot of Claim Summary in which the "Insured's Negligence" is listed as "100%").

[11] Exhibit 1, Kreller Depo, at 43:20-45:2, attaching Exh. 6.

3

vehicle, the policy holder and driver of the at-fault vehicle, the declaration page of the at fault driver/owner's auto policy, and the offer letter from the at-fault auto policy carrier.[12]

In response to Garrison's December 26, 2023 correspondence, on April 19, 2024, Plaintiff sent Garrison the dec page and Release from Michael Villella's policy (who was also insured by a USAA entity).[13] In light of the fact that Villella's liability and policy were not mentioned in the UM demand letter, Garrison sought further information from the adjuster that handled Plaintiff's claim against Villella. Garrison was informed that Villella's insurer paid its $15,000 tort limits because they were low, but they disputed liability.[14]

Garrison again responded to Plaintiff on May 20, 2024, explaining that it had received the information about Villella's policy, but Villella's policy disputed liability but agreed to make a compromise offer to resolve the matter for their insured.[15] Garrison further advised that it appeared Nolan was the sole and proximate cause of the accident and that Travelers, Nolan's insurer, accepted liability 100% and moved to resolve the matter for Mr. Kreller.[16] Therefore, the UM claim was not triggered.[17]

Notwithstanding that the Plaintiff was fully covered by a $1 million policy from the at-fault driver (and actually recovered $275,000 from the at-fault driver), he filed the instant lawsuit against his UM insurer, Garrison, on May 24, 2024, alleging that Villella's vehicle "violently and

---

[12]   Exhibit 4, Declaration of Apryl Saunders, attaching Garrison_Kreller 561.

[13]   *Id.*, attaching Garrison_Kreller 676-681; Exhibit 2, 61:15-62:25.

[14]   Exhibit 2, Corp Depo, 61:15-62:25.

[15]   Exhibit 4, Declaration of Apryl Saunders, attaching Garrison_Kreller 684-685.

[16]   *Id.*

[17]   *Id.*

4

forcefully crashed into the rear-end" of his vehicle, after which Nolan's vehicle "violently and forcefully crashed into the rear-end of Michael Villella's vehicle, which then crashed into the rear-end of Petitioner's vehicle again."[18] He further alleges that Garrison is in bad faith for failing to adequately compensate him pursuant to Louisiana Revised Statutes 22:1892 and 22:1973.

Plaintiff alleges in the suit that there were two violent impacts, one covered by Villella who only had $15,000 in insurance. After convincing Travelers to accept 100% of liability based on Nolan rear-ending Villella and recovering $275,000 from Travelers, Plaintiff now claims that Travelers' insured is only 50% at fault and that Villella – who drove the other car in the accident – was 50% at fault. As a result, Plaintiff now claims that Villella's $15,000 is insufficient to compensate Kreller for 50% of his injuries. All of these Johnny-come-lately allegations are inconsistent with Kreller's statements during the beginning of the claim when his efforts were focused on convincing Travelers to accept 100% of the fault. Nevertheless, because Travelers accepted 100% liability, there is no uninsured claim, and Plaintiff's attempt to obtain UM benefits from Garrison should be dismissed.

## II. Law and Argument

### a. Summary judgment standard

Summary judgment is appropriate if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[19] No genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could not return a verdict for the nonmoving party."[20] "[I]n arguing that a genuine issue of material fact exists that

---

[18]  Rec. Doc. 1, Petition.

[19]  FED. R. CIV. PROC. 56(a).

[20]  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

5

precludes summary judgment, the non-movant must identify specific evidence in the record to support its position."[21] Where the non-movant bears the burden of proof at trial, the "movant may merely point to an absence of evidence."[22] "When the movant meets its burden, the burden shifts to the non-movant, who must show by "competent summary judgment evidence" that there is a genuine issue of material fact."[23]

> **b. Plaintiff has been fully compensated by the underlying tortfeasor's insurer and, as such, he has no claim against Garrison for underinsured motorist coverage.**

It is well-settled under Louisiana law that the purpose of Uninsured and Underinsured Motorist insurance is "to provide full recovery for automobile accident victims who suffer damages caused by a tortfeasor who is *not covered by adequate liability insurance*."[24] Similarly, in *Clement v. Trinity Universal Ins. Co. of Kansas*, the Louisiana Third Circuit held that because the plaintiffs had "received sums in excess of" the damages they were awarded from insurance companies other than the UM carrier, they were "not unprotected by liability insurance; therefore, their UM insurance coverage is not available to them."[25]

Here, the at-fault tortfeasor was *not* underinsured. Kreller's damages were "covered by adequate liability insurance" as provided by Travelers, the insurer for Nolan, which accepted 100% fault. Because Travelers accepted 100% fault and had $1 million in limits, there was no uninsured loss. Indeed, Kreller acknowledged in his February 2, 2023 communication to Garrison that

---

[21] *Toups v. Moreno Group, L.L.C.,* No. 11–1559, 2013 WL 1187102 (W.D.La. Mar. 21, 2013) (citation omitted).

[22] *Badeaux v. Hurricane Hole Mgmt., LLC*, No. CV 17-4984, 2018 WL 6605906, at *2 (E.D. La. Dec. 14, 2018).

[23] *Id.*

[24] *Duncan v. U.S.A.A. Ins. Co.*, 2006-363 (La. 11/29/06), 950 So. 2d 544, 547 (emphasis added) (citing *Tugwell v. State Farm Ins. Co.,* 609 So.2d 195, 197 (La.1992); *Henson v. Safeco Ins. Co.,* 585 So.2d 534, 537 (La.1991)).

[25] 515 So. 2d 651, 651 (La. 3rd Cir. 1987).

Travelers was handling his claim as the insurer for the "at-fault driver."[26] Further, in communications with Travelers, Kreller never alleged that Nolan was only 50% at fault; instead, he demanded full compensation from Travelers and ultimately settled with them for $275,000.[27] Travelers' own internal documents confirm that they settled with him based on a finding of 100% fault on Linette Nolan.[28] Finally, even when he ultimately made a demand on his own UM insurer, he never mentioned multiple tortfeasors or claimed that Nolan was only 50% at fault in the accident.[29]

Allowing Plaintiff to recover uninsured motorist benefits in this case would go against public policy by allowing the Plaintiff potentially double recovery. The purpose of UM insurance is to protect an individual in a scenario "where their injuries exceed the available policy limits of third parties."[30] This is simply not the case here. Mr. Kreller's damages do not exceed the available policy limits of Nolan's insurer, Travelers, who accepted 100% liability. Moreover, if the Plaintiff thought that his damages were more than the amount that he settled for – $275,000 – there was $1 million in available coverage. He could have proceeded to trial against Travelers for damages only. Instead, he seeks to "double recover" by presenting a theory of 50/50 liability after the at-fault driver's insurance already accepted 100% liability. Again, the policy behind UM insurance does not allow such a result.

---

[26]  Exhibit 1, Kreller Depo, at 36:3-37:17 (attaching Exh.4, communication from Kreller to Garrison); *see also* Exhibit 2, Corporate Depo, at 14:9-16:21.

[27]  Exhibit 1, Kreller Depo, at 37:19- 43:9 (attaching Exh. 5, Plaintiff's demand to Travelers). Plaintiff has actually received a total of $309,130 in compensation for this claim, including $275,000 from Travelers, $15,000 from Villella's insurance, and $19,130 from his Medical Payments coverage with Garrison.

[28]  Exhibit 3, Travelers Subpoena Response, p. 353, (screenshot of Claim Summary in which the "Insured's Negligence" is listed as "100%").

[29]  Exhibit 1, Kreller Depo, at 43:20-45:2, attaching Exh. 6.

[30]  *Carson v. USAA Casualty Insurance Company*, 110 F.4th 791, 797 (5th Cir. 2024).

Kreller's claims should be dismissed because the at-fault driver in this case was not underinsured; she had $1 million in coverage, and Plaintiff has not shown that his damages exceed $1 million.

### c. Plaintiff's bad faith claim should be dismissed because UM coverage was never triggered and, therefore, Garrison cannot be in bad faith.

Plaintiff bears the burden of proving that Garrison acted in bad faith.[31] To maintain a cause of action for bad faith penalties and attorneys' fees under either Louisiana Revised Statute 22:1892 or 22:1973, the plaintiff must establish at least three elements: (1) the insurance company received satisfactory proof of a loss, (2) the company failed to tender payment within thirty (or sixty in the case of Revised Statute 22:1973) days of receipt of proof of loss, and (3) the company's failure to pay was arbitrary, capricious, or without probable cause.[32] "Arbitrary and capricious" is synonymous with "vexatious," and a vexatious refusal to pay "means unjustified, without reasonable or probable cause or excuse."[33]

A "prerequisite or finding that a party acted in bad faith is a finding that there is a valid claim, and 'an amount due' to the insured."[34] If there is no underlying claim or "amount due," then there can necessarily be no bad faith.[35] Indeed, "statutory penalties are inappropriate when the insurer has a reasonable basis to defend the claim and acts in good-faith reliance on that defense."[36] Courts routinely grant summary judgment dismissing bad faith claims when the plaintiffs have no

---

[31]   *Dickerson v. Lexington Ins. Co.*, 556 F.3d 290, 299 (5th Cir. 2009).

[32]   *Guillory v. Lee*, 16 So. 3d at 1126; *Louisiana Bag Co., Inc. v. Audubon Indem. Co.* (La. 12/2/08); 999 So. 2d 1104, 1112-13; *Jones v. Gov't Employees Ins. Co.*, 16-1168 (La. App. 4 Cir. 6/14/17); 220 So. 3d 915, 921.

[33]   *Louisiana Bag Co. Inc.*, 999 So. 2d at 1114.

[34]   *Ardoin v. Certain Underwriters at Lloyd's of London*, 2023-719, at *11 (La. App. 3 Cir. 4/3/24), 387 So. 3d 676, 683.

[35]   *Id.*

[36]   *Reed v. State Farm Mut. Auto. Ins. Co.*, 2003-0107 (La. 10/21/03), 857 So. 2d 1012, 1021.

valid underlying claim.[37] Because the tortfeasor in this case is not underinsured, Plaintiff's UM coverage was never triggered, and he necessarily has no claim for bad faith. In particular, all of the evidence provided by Plaintiff to Garrison confirmed that his UM coverage was not triggered because Nolan's insurer, Travelers, had accepted 100% liability and intended to make Kreller whole. Indeed, he acknowledged that he never told Garrison or Travelers that he believed Nolan and Villella were each fifty percent at fault, or that his attorney was even "in a position" to make that determination.[38]

At the very least, even if this Court finds that there is an issue of fact with respect to whether Plaintiff's UM coverage has been triggered, Garrison was not in bad faith for failing to make a UM tender. Garrison was told repeatedly and by multiple parties that Kreller's automobile injury claim was being handled by the at-fault driver (Nolan) and her insurance company (Travelers). UM insurance is designed to protect an insured when there is insufficient or inadequate underlying insurance coverage. Garrison was informed that Kreller was protected by adequate and sufficient underlying coverage. Garrison's decision not to pay cannot be considered "arbitrary, capricious, or without probable cause."[39]

### III.    Conclusion

Plaintiff's Uninsured Motorist coverage has never been triggered because the at-fault driver, Linette Nolan, was not an underinsured motorist; she had at least $1 million in underlying

---

[37] *See, e.g., Haynes v. Chubb & Sons, Inc.*, 20-0636, 2022 WL 15045434, at *4 (W.D. La. Oct. 25, 2022) (granting summary judgment and dismissing the plaintiffs' statutory bad faith claim after finding that the plaintiffs failed to show facts to establish the existence of recoverable damages).

[38] Exhibit 1, Kreller Depo, pp. 42-43.

[39] *Guillory v. Lee*, 16 So. 3d at 1126; *Louisiana Bag Co., Inc. v. Audubon Indem. Co.* (La. 12/2/08); 999 So. 2d 1104, 1112-13; *Jones v. Gov't Employees Ins. Co.*, 16-1168 (La. App. 4 Cir. 6/14/17); 220 So. 3d 915, 921.

coverage. Similarly, Plaintiff has no bad faith claim against Garrison because Plaintiff's UM coverage was never triggered, and he has no claim against Garrison for UM coverage.

          Respectfully submitted,

          */s/ Emily E. Ross*
          H. Minor Pipes, III, 24603
          Stephen L. Miles, 31263
          Emily E. Ross, 34739
          PIPES | MILES | BECKMAN, LLC
          1100 Poydras Street, Suite 1800
          New Orleans, Louisiana 70163
          Telephone: (504) 322-7070
          Facsimile: (504) 322-7520
          mpipes@pipesmiles.com
          smiles@pipesmiles.com
          eross@pipesmiles.com

          *Attorneys for Defendant, Garrison Property and Casualty Insurance Company*